781 So.2d 885 (2001)
The SUCCESSION OF Mildred Hunt EWING.
No. 34,413-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2001.
*887 David Dalia & Jack Jernigan, New Orleans, LA, Neal Johnson, Counsel for Plaintiff-In-Reconvention-Appellant.
George M. Snellings, IV, Monroe, LA, Counsel for Defendant-In-Reconvention-Appellee.
Blackwell, Chambliss, Henry, Caldwell & Cagle by Sam O. Henry, III, West Monroe, LA, Counsel for Plaintiff-Appellee.
Before NORRIS, KOSTELKA and DREW, JJ.
NORRIS, Chief Judge.
The plaintiff in reconvention, Mrs. Esther Ewing Jensen, appeals a judgment dismissing with prejudice her claims against one of the defendants in reconvention, the Succession of George M. Snellings III (with George M. Snellings III personally, hereinafter collectively referred to as "Snellings"). The District Court sustained exceptions of no right of action, no cause of action, res judicata and prescription filed by Snellings. Snellings has answered, seeking damages for frivolous appeal; Ms. Jensen has also filed a motion to strike passages from Snellings's appellate brief. For the reasons expressed, we affirm the ruling on the exception of no right of action but vacate the remainder of the judgment. We deny Snellings's request for damages for frivolous appeal and grant Ms. Jensen's motion to strike with an admonition to both parties.

Factual and procedural background
The decedent, Mildred Ewing, and her husband Wilson formerly owned two newspapers (The Times and The News Star World) and two TV stations in north Louisiana. According to the pleadings, Mr. Ewing died in 1952; Mrs. Ewing retained usufruct over the estate while the couple's two children, Robert Ewing III ("Robert") and Ms. Jensen acquired the naked ownership. Robert and Mrs. Ewing managed the companies until July 1977, when they sold to Gannett Publishing Company. Monroe attorney George M. Snellings III negotiated this sale. Mrs. Ewing and the two children each received over $4 million in proceeds. Ms. Jensen and her husband retained Snellings to manage their investment program with E.F. Hutton in an effort to enhance gain and minimize taxes.
The management of Ms. Jensen's portfolio has already been the subject of litigation. See, Jensen v. Snellings, 841 F.2d 600 (5 Cir.1988). According to the Fifth Circuit, "Snellings pooled the Jensens' cattle investments with those of the Ewings in a partnership denominated REM Company." Snellings later persuaded the Jensens to transfer part of their assets to oil and gas limited partnerships. Unfortunately, both parts of the Jensens' portfolio performed poorly. In 1981 they sued Snellings and others, alleging SEC, RICO, NYSE and Louisiana Blue Sky Law violations, as well as state law breaches of contract and fiduciary duty. In 1988, the Fifth Circuit held that the Jensens' RICO claims against Snellings were not prescribed. *888 In December 1989, Snellings settled with the Jensens. The compromise agreement recites that Snellings paid $1.375 million in cash to the Jensens and Internal Revenue in exchange for the Jensens' agreement to "release, remit and forever discharge" him from "any and all claims, demands, suits, actions, rights of action, causes of action and liability whatsoever, which the Jensens, or either of them, have had, now have or may in the future have, arising out of, or in any way connected with the claims asserted by the Jensens in the Federal Court suit and the State Court suit."[1]
Meanwhile, according to Ms. Jensen's pleadings, her mother began suffering from senile dementia and Alzheimer's Disease; by 1982 or 1983, she was incapable of managing her affairs. Ms. Jensen alleges that her bother, Robert, and Mrs. Ewing's lawyer, Snellings, both obtained powers of attorney from Mrs. Ewing and began managing her sizable estate; in answers to interrogatories, Ms. Jensen said she "believed that the power of attorney persisted from approximately 1975 until at least 1988." Nevertheless, in June 1989 Mrs. Ewing executed a statutory will, making specific bequests to her grandchildren and leaving the residue of the estate to Robert (65%) and Ms. Jensen (35%). The will also named Monroe attorney Paul Fink as executor.
Mrs. Ewing died on September 30, 1996. Within a month Robert filed the instant petition to probate the 1989 will. In early 1997 Mr. Fink qualified as succession representative. By petition to encumber succession property, he alleged that the estate contained no liquid assets but included one significant immovable, Mrs. Ewing's undivided 4/6 interest in her large home and lots on Island Drive in Monroe. Mr. Fink sought approval to mortgage her interest in the house to cover expenses of maintenance, repair and taxes. He then sought approval to sell the interest, showing the house was appraised at $830,000.
Ms. Jensen formally opposed the sale and alleged the will was null. In April 1998 she filed the instant reconventional demand, naming as defendants her brother, Robert; the executor, Mr. Fink; a nephew; and her mother's former attorney, Snellings. She asserted various claims, chiefly that the defendants had dissipated the property subject to her usufruct. Against Snellings she alleged "wasting and dissipation of a multimillion dollar estate." Over the course of subsequent filings, she elaborated that Snellings mismanaged Mrs. Ewing's investments while he held her power of attorney from 1975 to 1988.
Snellings died in October 1998; his estate has been substituted as party defendant. In January 2000 Snellings filed numerous exceptions, including four peremptory exceptions: res judicata, prescription, no cause of action and no right of action. Hearing on the exceptions was fixed for February 3, 2000. Urging that he had a prior obligation in Federal Court in New Orleans, counsel for Ms. Jensen moved for a continuance. This was denied.
After a brief hearing, the District Court sustained all of Snellings's peremptory exceptions, dismissing Ms. Jensen's claims against him with prejudice.[2] Ms. Jensen *889 has appealed, challenging the denial of the motion for continuance, as well as each of the rulings on the exceptions.

Discussion: No right of action
By her fourth assignment of error Ms. Jensen urges the District Court erred in sustaining the exception of no right of action. She contends it is inconsistent to deny her right of action against Snellings while allowing her to proceed against the other defendants. She further argues that her "cause of action and right to pursue her claim" is obviously established by Anderson v. Collins, 26,142 (La.App. 2 Cir. 1/6/95), 648 So.2d 1371, writs denied 95-0629 (La.4/21/95), 653 So.2d 576, 95-0783 (La.4/21/95), 653 So.2d 576.
The peremptory exception of no right of action tests whether the plaintiff has the capacity or legal interest in judicially enforcing the right asserted. La. C.C.P. art. 927 A(5); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). The essential function of this exception is to provide a threshold device which terminates suits brought by one who has no interest in enforcing judicially the right asserted. Id.; Alco Collections Inc. v. Poirier, 95-2582 (La.App. 1 Cir. 9/27/96), 680 So.2d 735, writ denied 96-2628 (La.12/13/96), 692 So.2d 1067. Simply put, this exception tests whether this plaintiff, as a matter of law, has an interest and capacity to enforce the claim sued on. Id.; Greenbriar Nursing Home Inc. v. Pilley, 93-2059 (La.5/23/94), 637 So.2d 429.
The thrust of Ms. Jensen's claim against Snellings is that he wasted, dissipated or mishandled Mrs. Ewing's assets through the use of the latter's power of attorney. Mrs. Ewing's succession was opened shortly after her death. The substantive and procedural law are unanimous in stating that the right to assert Mrs. Ewing's tort claims belongs to her succession. Civil Code art. 938 provides:
Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in the estate. Upon qualification of a succession representative, the exercise of those rights is subject to the administration of the estate.
The succession representative "shall enforce all obligations" in favor of the succession. La. C.C.P. art. 3211. Most importantly, C.C.P. art. 685 provides:
Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.
In Browne v. Witten, 153 So.2d 184 (La. App. 2 Cir.), writ refused 244 La. 1002, 156 So.2d 56 (1963), the residuary legatees and heirs brought an action seeking recovery from the testamentary executor of sums that he and his wife allegedly personally owed the succession. The District Court sustained an exception of no right of action, and the plaintiffs appealed. This court affirmed, explaining:
We feel the lawmakers have made it abundantly clear * * * that while a succession is under administration, the administrator is the sole person authorized to enforce the collection of any debt *890 alleged to be due the succession. This leads to an orderly administration of the estate and prevents a multiplicity of suits which could result if individual heirs were allowed to prosecute claims on behalf of the estate.
We further rejected the argument that denying a right of action of the heirs and legatees "placed a cloak of immunity around the executor." The law does not protect the succession representative from his acts of commission or omission; "there are a number of ways the plaintiffs can force him to properly administer the estate or to recompense them for his failure to do so."
Since this court's opinion in Brown v. Witten, the appellate courts have consistently sustained exceptions of no right of action under these circumstances. See, e.g., Succession of Hess, 205 So.2d 74, 28 A.L.R.3d 1186 (La.App. 4 Cir.1967), writ refused 251 La. 862, 206 So.2d 712 (1968); Jackson v. Lopez, 524 So.2d 769 (La.App. 3 Cir.), writ denied 525 So.2d 1044 (1988); Anderson v. Collins, supra.[3] Ms. Jensen has not distinguished these cases from her own. We conclude that she lacks a right to pursue this action, which properly belongs to the succession representative.
We decline to address the contention that the District Court allowed "the same right of action to proceed against the other parties." That portion of the case is not properly before us on the instant appeal, and we will not speculate on why the other defendants apparently elected not to file exceptions of no right of action.
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed. La. C.C.P. art. 934. Ms. Jensen alleges, without any supporting authority, that any defect in her petition could be cured by amendment. Br., 4. In view of the codal authority of La. C.C. art. 938 and C.C.P. arts. 685 and 3211, and the jurisprudence following Browne v. Witten, supra, as a matter of law the succession representative has the right of action and no amendment of Ms. Jensen's pleadings can cure the deficiency. For these reasons we affirm the judgment insofar as it sustained the exception of no right of action and did not grant leave to amend.
This conclusion, however, requires us to vacate the judgment on the remainder of the exceptions. As noted, the exception of no right of action is a threshold device which terminates suits brought by a person with no legal interest in judicially enforcing the right. Babineaux v. Pernie-Bailey Drilling Co., supra; Alco Collections Inc. v. Poirier, supra. Upon finding no right of action, the court must dismiss the suit. Taylor v. Woodpecker Corp., 562 So.2d 888, 892 (La. 1990); R.G. Claitor's Realty v. Juban, 391 So.2d 394, 398 (La.1980). If the exception of no right of action is sustained pretrial, there are no substantive rights to determine on the merits. Lindsay, Marcel, Harris & Pugh, L.L.C. v. Harris, 98-2677 (La.App. 1 Cir. 2/18/00), 752 So.2d 335; Johnson v. T.L. James & Co., 93-1170 (La.App. 1 Cir. 4/8/94), 635 So.2d 744, writ denied 94-1178 (La.6/24/94), 640 So.2d *891 1354; Guidry v. McZeal, 487 So.2d 780 (La.App. 3 Cir.1986).
We therefore find that after its correct ruling on the exception of no right of action, the District Court erred in deciding the other exceptions. As noted above, the substance of these claims could be properly addressed in a claim filed by the succession representation to pursue the succession's rights or against him for failing to do so. Browne v. Witten, supra. For this reason, we vacate the District Court's judgment insofar as it sustained the exceptions of no cause of action, res judicata and prescription.
This conclusion also moots Ms. Jensen's assignment of error addressing the District Court's refusal to grant her motion to reset or continue the hearing set for February 3.[4] No extension of time could confer a right of action upon Ms. Jensen. Moreover, on this record the District Court did not abuse its discretion in ruling on the motion. La. C.C.P. art. 1601.

Frivolous appeal
By answer to appeal, Snellings requests damages for a frivolous appeal pursuant to La. C.C.P. art. 2164. In support he urges that Ms. Jensen's position is without merit and that needless hours have been spent defending claims "filed by her third selection of counsel."[5]
Appeals are favored by the law and appellate courts are reluctant to impose damages for frivolous appeals. Medicus v. Scott, 32,326 (La.App. 2 Cir. 9/22/99), 744 So.2d 192, and citations therein. Article 2164 is penal in nature and must be strictly construed. Joyner v. Wear, 27,631 (La.App. 2 Cir. 12/6/95), 665 So.2d 634, writs denied 96-0040 (La.2/28/96), 668 So.2d 370, 96-0042 (La.2/28/96), 668 So.2d 370. An appeal is deemed frivolous only if it does not present a substantial legal question or if it is obviously taken solely for the purpose of delay or in circumstances showing that appealing counsel does not seriously believe in the position he advocates. Medicus v. Scott, supra.
Because the instant judgment did not condemn Ms. Jensen to pay damages, we cannot find that the appeal was taken to delay payment. See, Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993). While the briefing of the exception of no right of action is far from comprehensive, we are not prepared to say that Ms. Jensen's counsel did not believe he was entitled to relief. As a result of the appeal, this court is vacating a portion of the judgment. Under the circumstances, the prayer for damages under art. 2164 is denied.

Motion to strike
Finally, Ms. Jensen has filed a motion to strike on grounds that Snellings's reply brief violates URCA Rules 2-12.4 and 2-12.5. She cites numerous passages for containing "improper, scandalous, libelous, discourteous, critical, and completely false allegations, insults and innuendo." By order dated November 22, 2000, this court declined to strike the reply brief in its entirety, but reserved the right to take appropriate action upon submission of the case.
*892 Appellate briefs are regulated by URCA Rules 2-12.4 and 2-12.5, which provide in part:
The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
We have closely examined the reply brief and are constrained to find that it does in fact contain allegations that are irrelevant, not supported by the record, and phrased as pejorative and discourteous personal statements about Ms. Jensen. We are sensitive to the fact that Snellings is now represented by his son, George M. Snellings IV, who may take umbrage at accusations that his father may have engaged in misconduct. Nevertheless, some of the statements in brief exceed the outer limits of courtesy and professionalism as delineated in Rules 2-12.4 and 2-12.5. We therefore grant the motion to strike with respect to the following, which we order expunged from the record in this case:
Page 3, first full sentence, description of animosity between the parties.
Page 3, lines 7-8, description of Ms. Jensen's state of mind.
Page 4, line 17, description of Ms. Jensen and her relationship with her mother and brother.
Page 4, line 29-Page 5, line 1, reference to Ms. Jensen's alleged relation to her counsel.
Exhibit "A," transcript of memorial tribute.
On our own motion, we find that Ms. Jensen's brief also contains assertions that violate Rule 2-12.4. Page 6, line 26, refers to a conversation with an unnamed person and is not in the record; page 7, first full paragraph, makes extensive reference to evidence adduced at the subsequent trial but not part of the instant record. We sense an animus on both sides to provoke further violations of these rules. We deplore any debasement of courtesy and professionalism. In all future briefs filed in this case, these or similar statements will be considered a contempt of court and disposed of accordingly.

Conclusion
For the reasons expressed, the judgment is affirmed insofar as it sustains the exception of no right of action and dismissing Ms. Jensen's claims against the Succession of George M. Snellings III, without leave to amend. The judgment is vacated insofar as it sustains the exceptions of no cause of action, res judicata and prescription.
The motion for damages for frivolous appeal is denied. The motion to strike is granted, together with the admonition herein. Costs are assessed equally to the parties.
AFFIRMED IN PART, VACATED IN PART; PRAYER FOR FRIVOLOUS APPEAL DENIED; MOTION TO STRIKE GRANTED; ADMONITION ISSUED.
NOTES
[1] The document, entitled Act of Receipt, Restricted Release, Assignment, Indemnification, Defense, and Hold Harmless Agreement, appears at R.pp. 239-253. Snellings asserts in appellate brief that the total settlement was actually $3.75 million.
[2] Ms. Jensen asserts in brief that her case against the other defendants proceeded to trial in the Fourth Judicial District Court in June 2000. The record includes her post-trial brief in that case; Snellings has supplemented the record with a copy of the district court's reasons for judgment.
[3] Contrary to Ms. Jensen's assertion in brief, Anderson v. Collins, supra, does not hold that an heir has "right to pursue her claim herein." Anderson actually held that the plaintiffs had no right of action except for the one presumptive heir who also served as succession representative. 648 So.2d at 1380.
[4] The record does not contain Ms. Jensen's "motion to reset the hearing"; however, by opposition Snellings alleged that he received a faxed copy of Ms. Jensen's "motion to continue" on February 1. The District Court rejected the motion by order of February 2, as well as a re-urged motion filed shortly thereafter.
[5] After the instant hearing, Snellings filed a motion for sanctions under La. C.C.P. art. 863. The record does not contain a ruling on this, but Snellings alleges in brief that the District Court denied it. Br., 15. He does not appeal this ruling, but now seeks damages for frivolous appeal only.