### HEW FEDERAL CREDIT UNION, Appellant,

v.

### Sharon L. BATTLE, Appellee.

### No. 00–CV–38.

District of Columbia Court of Appeals.

Argued April 17, 2001.

Decided May 10, 2001.

Andrew B. Schulwolf, for appellant.

Michael T. Wood, Washington, DC, for appellee.

Before STEADMAN, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

The issue before us, one of first impression in the District of Columbia but by no means a stranger to other courts, is whether a guarantor of a secured loan who does not own the collateral is nevertheless a "debtor" within the meaning of Title 9 of the Uniform Commercial Code ("UCC"), D.C.Code § 28:9–101 *et seq.* (1996), so as to require the creditor to give the guarantor notice of a foreclosure sale in accor-

dance with the UCC. In line with the vast majority of courts deciding the issue, we answer "yes." Since notice was not given to the guarantor Battle, the trial court correctly granted summary judgment to her on plaintiff/appellant's suit to enforce her guaranty.

## I.

In May of 1996, codefendant Steve M. Rhinehart executed a LoanLiner Agreement with plaintiff HEW Federal Credit Union ("HEW"). Under the agreement, HEW loaned Rhinehart $30,000 to buy a 1988 Porsche and obtained a security interest in the vehicle. As a condition of the loan, defendant Sharon Battle executed a separate Guaranty Agreement which provided that she would pay Rhinehart's loan obligation in the event he defaulted.[1] Rhinehart used the loan to buy a Porsche from a car dealership, and was the sole owner of the car.

Rhinehart defaulted and ultimately surrendered the vehicle to a repossession company. HEW then sold the car for $12,000. It is undisputed that Battle received no notice of the foreclosure sale beforehand. In April of 1999, HEW sued Rhinehart and Battle in Superior Court for the "deficiency balance" of $23,683.34 plus interest. A default judgment was entered against Rhinehart, but Battle moved for summary judgment on the ground that she had not been given notice of the foreclosure sale as required by D.C.Code § 28:9–504(3). HEW responded that Battle, as a guarantor who did not own the collateral, was not a "debtor" within the meaning of D.C.Code § 28:9–105(1)(d) and thus not entitled to notice under § 28:9–504(3). The trial court agreed with Battle and granted her motion.

## II.

■ Under Title 9 of the UCC, a secured creditor like HEW is granted certain rights in the event of a default on a secured obligation. *Id.* § 28:9–501 *et seq.* For example, absent contrary agreement it may take possession of the collateral, § 28:9–503; it may "sell, lease or otherwise dispose of" the repossessed collateral to recover its value, § 28:9–504(1); and it may pursue a deficiency judgment against the debtor. *Id.* § 28:9–504(2). As a condition of sale, however (and with exceptions not here relevant), "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." *Id.* § 28:9–504(3). Because this jurisdiction follows the "absolute preclusion" rule concerning deficiency judgments, *see Fleming v. Carroll Publ'g Co.*, 581 A.2d 1219, 1224 (D.C.1990), a secured creditor who fails to notify the debtor of a proposed sale of repossessed property forfeits the right to recover a deficiency judgment, *id.* at 1223–24; *Randolph v. Franklin Inv. Co.*, 398 A.2d 340 (D.C.1979) (en banc); its "recovery is limited to the proceeds from the . . . sale." *Id.* at 343.

HEW does not dispute these principles, but contends that the notice requirement of § 28:9–504(3) did not apply to Battle because, as a guarantor who did not own the collateral, she was not a "debtor" within the meaning of the UCC. Although Title 9 does not define "guarantor," it does define "debtor," and HEW argues that the plain language of the definition "specifically excludes . . . those who are indebted on

---

1. The agreement further provided that "[t]he Credit Union can demand that you [Battle] pay the debt even if it does not try to collect from [Rhinehart] and without enforcing any security interests [Rhinehart] has given the Credit Union."

a secured obligation but who do not own the collateral which secures the obligation" (Br. for Appellant at 5). We do not agree.

Section 28:9–105(1)(d) states:

"Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

The argument that "debtor" includes only one who owns the collateral seems contradicted explicitly by the first sentence of the definition, specifying that a person "who owes payment or other performance of the obligation secured" is a debtor "whether or not he owns ... the collateral." Battle indisputably owed performance, if not actual "payment," of the "obligation secured" in the event Rhinehart failed to pay it.[2] HEW argues, nonetheless, that the second sentence of the definition restricts "debtor" to mean "the owner of the collateral" whenever Article 9 deals with "collateral," and that § 28:9–504(3) deals only with that subject. This argument is unavailing.[3] HEW admits that Battle was an "obligor" for purposes of "any provision dealing with the obligation," and the second sentence states that "where the context so requires," "debtor" includes both the owner of the collateral and the obligor. The context of

§ 28:9–504(3) demonstrates why "debtor" in that provision includes a guarantor such as Battle. As the Supreme Court of Virginia has explained:

Interpreted literally and viewed in isolation, § [28:]9–504(3) might be held to deal with collateral alone. But the subsection cannot be interpreted or viewed so narrowly; it must be construed in context with other pertinent provisions of the UCC.

The next preceding subsection, [28:]9–504(2), makes a debtor "liable for any deficiency." A comaker or guarantor may be held liable for a deficiency. The amount of a deficiency is determined by deducting the proceeds of sale or other disposition of collateral from the balance due on the obligation. Hence, a comaker or guarantor has a vital interest in maximizing the proceeds of sale or other disposition and in reducing his potential liability for a deficiency.

A comaker or guarantor, however, cannot protect his interests without notice of an impending sale or other disposition of collateral. We believe, therefore, that the context in which the term "debtor" is employed in § [28:]9–504(3) requires that the term be interpreted to include both the owner of the collateral and the obligor, if they are not the same person.

*Rhoten v. United Virginia Bank*, 221 Va. 222, 269 S.E.2d 781, 784–85 (1980).

The vast majority of the courts to consider the issue agree that a guarantor is among those obligors owing a duty to pay deficiencies who are "debtors" as defined

---

**2.** Indeed, as pointed out, note 1, *supra*, she owed that performance whether or not HEW sought to collect from Rhinehart or to enforce its security interest in the property.

**3.** Official Comment 2 to the UCC states that the second sentence was intended to address

the situation where "one person furnishes security for another's debt, and sometimes [where] property is transferred subject to a secured debt of the transferor which the transferee does not assume."

by Article 9. *See Tropical Jewelers, Inc. v. Nationsbank, N.A.*, 781 So.2d 392, 26 Fla. L. Weekly D 80, 2000 Fla.App. LEXIS 16905 (Fla.Dist.Ct.App.2000) (en banc) (citing cases); *Gambo v. Bank of Maryland*, 102 Md.App. 166, 648 A.2d 1105, 1108 n. 4 (1994) (same). Particularly in connection with the notice provision, HEW's distinction between owners of the collateral and other obligors disregards "the scheme of ... Article 9 [which] is to make distinctions, where distinctions are necessary, along functional rather than formal lines." *Ford Motor Credit Co. v. Lototsky*, 549 F.Supp. 996, 1003 (E.D.Pa. 1982) (original brackets, emphasis, and footnote omitted). Moreover,

> the unconditional guarantor is in a very real sense the debtor. When the probability of deficiency looms after default, the guarantor is the real target of the secured party. It is simply inequitable, therefore, to permit the secured party, who fixes the amount of the guarantor's liability in the first step of the collection effort by repossession and sale, to deny in the face of this economic reality that the guarantor is in fact its debtor. At that point, the guarantor is the only debtor. Furthermore, where the debtor and guarantor are in essence the same entity ... it is equally unjust to allow a creditor to evade the Code duties by merely insisting on a guaranty.

*Id.* at 1004 (footnote omitted). In these circumstances, the notice provision of § 28:9–504(3) is as critical to a guarantor as to any other debtor:

> The purpose of requiring notice is threefold. It gives the debtor an opportunity to exercise the right of redemption of the repossessed collateral.... It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity to seek out persons who might be interested in purchasing the collateral. Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he may be liable.... Guarantors[,] accommodation makers and others in similar positions have an equal or greater interest in seeing that the collateral is sold for the best price since their resources will be called upon to meet the deficiency.

*Rushton v. Shea*, 423 F.Supp. 468, 469–70 (D.Del.1976); *see also Randolph*, 398 A.2d at 345. Finally, this court and others have noted—and HEW does not question—the relative "ease with which any creditor can comply with the notice requirements" of § 28:9–504(3), *id.* at 347, certainly as relates to a guarantor. *See Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc.2d 78, 401 N.Y.S.2d 404, 412 (Sup.Ct.1977) ("Since the guaranty agreement is executed at the request of and for the benefit of the secured party, the identity and location of the guarantor are obviously already known to the creditor.").

For all of these reasons, the judgment of the Superior Court is

*Affirmed.*